IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NAHEDA FALEH AL MURAIHEG, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CAROLYN W. COLVIN, ACTING )<br>COMMISSIONER OF SOCIAL SECURITY, )<br>)<br>Defendant. ) | Civil Action No. 16-75-E |

O R D E R

AND NOW, this 18th day of September, 2017, upon consideration of the parties' cross-motions for summary judgment, the Court, upon review of the Commissioner of Social Security's final decision denying Plaintiff's claim for Supplemental Security Income ("SSI") benefits under Subchapter XVI of the Social Security Act, 42 U.S.C. § 1381, et seq., finds that the Commissioner's findings are supported by substantial evidence and, accordingly, affirms. See 42 U.S.C. § 405(g); Jesurum v. Secretary of U.S. Department of Health & Human Services, 48 F.3d 114, 117 (3d Cir. 1995); Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992), cert. denied sub nom., 507 U.S. 924 (1993); Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988). See also Berry v. Sullivan, 738 F. Supp. 942, 944 (W.D. Pa. 1990) (if supported by substantial evidence, the Commissioner's decision must be affirmed, as a federal court may neither reweigh

the evidence, nor reverse, merely because it would have decided the claim differently) (citing Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981)).[1]

---

[1] The Court finds no merit in Plaintiff's arguments that the Administrative Law Judge ("ALJ") erred in finding him to be not disabled, and finds that substantial evidence supports the ALJ's decision.

Plaintiff's primary argument is that the ALJ erred by affording insufficient weight to the opinion of Plaintiff's treating psychologist, Justin Aleia, D.O., and too much to those of the consultative examiner, Glenn Bailey, Ph.D., and of the state agency reviewing agent, Phyllis Brentzel, Psy.D. It is true, as Plaintiff asserts, that when assessing a claimant's application for benefits, the opinion of the claimant's treating physician generally is to be afforded significant weight. See Fargnoli v. Massanari, 247 F.3d 34, 43 (3d Cir. 2001); Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999). In fact, the regulations provide that for claims, such as this one, filed before March 27, 2017, a treating physician's opinion is to be given "controlling weight" so long as the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record. 20 C.F.R. § 416.927(c)(2); Fargnoli, 247 F.3d at 43; Plummer, 186 F.3d at 429. As a result, the ALJ may reject a treating physician's opinion outright only on the basis of contradictory medical evidence, and not on the basis of the ALJ's own judgment or speculation, although he may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided. See Plummer, 186 F.3d at 429.

However, it is also important to remember that:

> The ALJ -- not treating or examining physicians or State agency consultants -- must make the ultimate disability and RFC determinations. Although treating and examining physician opinions often deserve more weight than the opinions of doctors who review records, "[t]he law is clear . . . that the opinion of a treating physician does not bind the ALJ on the issue of functional capacity[.]" Brown v. Astrue, 649 F.3d 193, 197 n. 2 (3d Cir.2011). State agent opinions merit significant consideration as well.

Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011)(internal citations omitted in part). Here, the ALJ included in his decision a substantial discussion as to why he gave minimal weight to Dr. Aleia's opinion (R. 417), and greater weight to those of the consultative examiner, provided on May 1, 2013 (R. 309-22), and of the state agency reviewing agent, provided on May 14, 2013 (R. 108-11), and as to how he formulated Plaintiff's residual functional capacity ("RFC"). (R. 27-35).

Although, in general, "the opinions of a doctor who has never examined a patient have less probative force as a general matter, than they would have had if the doctor had treated or

2

examined him,'" Morales v. Apfel, 225 F.3d 310, 320 (3d Cir. 2000)(internal quotations omitted), where "the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit." Id. at 317. See also Dula v. Barnhardt, 129 Fed. Appx. 715, 718-19 (3d Cir. 2005). The ALJ, of course, "'cannot reject evidence for no reason or for the wrong reason,'" Morales, 225 F.3d at 317 (quoting Plummer, 186 F.3d at 429), and can only give the opinion of a non-treating, non-examining physician weight insofar as it is supported by evidence in the case record, considering such factors as the supportability of the opinion in the evidence, the consistency of the opinion with the record as a whole, including other medical opinions, and any explanation provided for the opinion. See SSR 96-6p, 1996 WL 374180 (S.S.A.), at *2 (July 2, 1996). In certain cases, it would not be unwarranted to give more weight to the non-examining professional's opinion. See Salerno v. Comm'r of Soc. Sec., 152 Fed. Appx. 208 (3d Cir. 2005) (affirming an ALJ's decision to credit the opinion of the non-examining state agency reviewing psychologist because his opinion was more supported by the record than the opinions of the treating physician and the consultative examiner).

Plaintiff challenges the relative weight given by the ALJ to the opinions in the record on various grounds. He asserts, for instance, that the non-treating reviewers' opinions were given more than a year prior to the opinion of Dr. Aleia and without the benefit of treatment notes from Stairways Behavioral Health that post-date those opinions. Generally speaking, there is no specific limit on how much time may pass between a medical professional's report or opinion and the ALJ's decision relying on it. See Chandler, 667 F.3d at 361. Indeed, "there is always a time lapse between the consultant's report and the ALJ hearing and decision." Id. However, Plaintiff argues that the fact that the medical evidence post-dating the opinions of Drs. Bailey and Brentzel, but to which Dr. Aleia did have access, demonstrates that the time gap in this case is relevant. Indeed, where there is a substantial amount of new evidence between the date on which an opinion upon which an ALJ relies and the date on which the ALJ renders his or her decision, remand may be warranted. See Cadillac v. Barnhart, 84 Fed. Appx. 163, 168-69 (3d Cir. 2003); Grimes v. Colvin, 2016 WL 246963, at *2 (W.D. Pa. Jan. 21, 2016). However, Dr. Aleia himself in no way suggested that his opinion was meant to account for any changes in Plaintiff's condition between May of 2013, when the non-treating reviewers offered their opinions, and October 17, 2014, when he offered his own. (R. 417). Moreover, while there is in fact evidence to which the non-treating reviewers had no access, the ALJ was aware of and considered and discussed said evidence in weighing the opinions.

Plaintiff further argues that the record does not support Dr. Bailey's findings of various moderate restrictions, adopted by Dr. Brentzel and the ALJ, because his own report is inconsistent with such a finding. He specifically argues, inter alia, that Dr. Bailey's assessment of a Global Assessment of Functioning ("GAF") score of 45 is inconsistent with the mostly moderate limitations to which he opined. However, GAF scores do not directly correlate to a determination of whether an individual is or is not disabled under the Act:

> The GAF scale, which is described in the DSM-III-R (and the DSM-IV), is the scale used in the multiaxial evaluation system endorsed by the American Psychiatric Association. It does not

3

>have a direct correlation to the severity requirements in our mental
>disorders listings.

65 Fed. Reg. 50746, 50764-65. While under certain circumstances a GAF score can be considered evidence of disability, standing alone, a GAF score does not evidence an impairment seriously interfering with a claimant's ability to work. See Lopez v. Barnhart, 78 Fed. Appx. 675, 678 (10th Cir. 2003). GAF scores may indicate problems that do not necessarily relate to the ability to hold a job. See id.; Zachary v. Barnhart, 94 Fed. Appx. 817, 819 (10th Cir. 2004); Wilkins v. Barnhart, 69 Fed. Appx. 775, 780 (7th Cir. 2003); Howard v. Comm'r of Soc. Sec., 276 F.3d 235, 241 (6th Cir. 2002); Power v. Astrue, 2009 WL 578478, at *8 (W.D. Pa. Mar. 5, 2009). For instance, a GAF score between 41 and 50, such as the one at issue here, reflects "serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) **OR** any serious impairment in social, occupational, **or** school functioning (e.g., no friends, unable to keep a job)." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (4th ed., Text Rev. 2000)(emphasis added). Accordingly, the mere fact that a treating mental health care provider assigned certain GAF scores would not necessarily indicate that Plaintiff is disabled. Dr. Bailey's report and findings, of course, contain far more than a GAF score, and nothing indicates that these findings are inconsistent with that score as assigned by Dr. Bailey.

To the extent that Plaintiff invites the Court to adopt his own interpretation of Dr. Bailey's notes in evaluating his opinion, the Court again emphasizes that, if supported by substantial evidence, the Commissioner's decision must be affirmed, as a federal court may neither reweigh the evidence, nor reverse, merely because it would have decided the claim differently. See Berry, 738 F. Supp. at 944 (citing Cotter, 642 F.2d at 705). The record here establishes that the ALJ properly considered the evidence and that the evidence was sufficient to support the significant weight given to the opinions of the consultative examiner and the state reviewing agent.

Regardless, the ALJ's decision to afford minimal weight to Dr. Aleia's opinion relied on more than the non-treating reviewers' opinions, relying also on the objective medical evidence, including Dr. Aleia's own treatment notes, Dr. Aleia's limited history with Plaintiff, and Plaintiff's inconsistent and conservative treatment record, all of which the ALJ discussed at significant length. Plaintiff claims that the ALJ mischaracterized Dr. Aleia's treatment notes in implying that they documented objective findings "essentially within normal limits." (R. 34). While, again, the Court cannot reweigh the evidence, in any event, the record supports the ALJ's statement that the objective findings were essentially within normal limits. Although the notes obviously contain Plaintiff's complaints and various diagnostic findings, numerous findings in Dr. Aleia's August 26, 2014 and October 10, 2014 treatment notes indicate behavior and conditions within normal limits. (R. 349-50, 412-14). The Court finds that substantial evidence supports the ALJ's treatment of these records.

Likewise, it was appropriate for the ALJ to consider the limited treatment history between Plaintiff and Dr. Aleia, and whether Dr. Aleia had any specialization or expertise in occupational medicine, as these are factors ALJs must take into account when weighing medical

4

opinion evidence. See 20 C.F.R. 416.927(c)(2)(i) and (c)(5). The Court further notes that while, according to Plaintiff, "Dr. Aleia prepared a medical source statement which detailed plaintiff's functional limitations" (Doc. No. 10 at 15), it would be more accurate to say that he answered four yes-or-no questions on a form prepared by counsel with no supporting explanation. Given the bare-bones nature of Dr. Aleia's opinion, the ALJ reasonably questioned the nature of his relationship with Plaintiff and his experience in rendering these types of occupational opinions. In sum, the record indicates that the ALJ properly weighed and considered all of the record evidence in considering the medical opinions and in formulating the RFC, and substantial evidence supports his findings.

Plaintiff also argues that the ALJ improperly determined the credibility of his testimony and that of his girlfriend, Anwar Al Shirify. He attempts to do so, though, by singling out each factor considered by the ALJ and arguing that the factor alone would not permit the ALJ to disregard the testimony. However, the ALJ did not rely on any one factor but rather considered a variety of factors in evaluating the testimonial evidence. For instance, when determining the credibility of Plaintiff's subjective complaints, he considered Plaintiff's truncated work history. (R. 33). While this factor alone may not have been determinative as to credibility, it is certainly a proper factor for consideration. See Ford v. Barnhart, 57 Fed. Appx. 984, 988 (3d Cir. 2003). Likewise, the ALJ properly considered Plaintiff's infrequent and conservative treatment history, see Garrett v. Comm'r of Soc. Sec., 274 Fed. Appx. 159, 164 (3d Cir. 2008); SSR 96-7p, 1996 WL 374186 (S.S.A.), at *7 (July 2, 1996), SSR 16-3p, 2016 WL 1119029 (S.S.A.), at *7 (Mar. 16, 2016), but he did not base his credibility determination on that factor alone.

Moreover, an ALJ may consider a claimant's activities of daily living in evaluating the claimant's credibility regarding his or her symptoms. See Garrett, 274 Fed. Appx. at 164 (citing Burns v. Barnhart, 312 F.3d 113, 129-30 (3d Cir. 2002)); 20 C.F.R. § 416.929(c)(3)(i). Plaintiff takes issue, nonetheless, with the ALJ's consideration of a trip he took to see family in Iraq in 2014. However, not only did the ALJ emphasize that such a trip was not necessarily inconsistent with a disability, he also explained that the trip in question came during a period of nearly a year during which he sought mental health treatment only once, purportedly because he refused to go anywhere based on feelings of uselessness. (R. 27-28, 30, 33, 60). The ALJ also noted that Plaintiff, at his hearing on November 4, 2014, actually denied the trip the record shows he had taken just a few months earlier. (R. 28, 58-59, 439). Plaintiff, of course, has offered alternative explanations as to why these factors do not reflect poorly on his credibility, but the ALJ obviously rejected his explanations. As noted, none of these factors were cited as uniquely precluding Plaintiff from being disabled; rather, they were part of the ALJ's overall credibility analysis, as they should have been. As a general matter, an ALJ's credibility determination is afforded significant deference. See Reefer v. Barnhart, 326 F.3d 376, 380 (3d Cir. 2003). Here, there was clearly sufficient evidence to support the ALJ's findings regarding the veracity of Plaintiff's subjective complaints.

Plaintiff's argument regarding the credibility findings as to his girlfriend's testimony suffers from the same deficiency of trying to single out factors that were considered merely as part of an overall analysis. While Ms. Al Shirify's pecuniary interest in the matter may not have in itself permitted her testimony to be discounted, here it was merely one of several factors

Therefore, IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment (document No. 9) is DENIED and Defendant's Motion for Summary Judgment (document No. 13) is GRANTED.

                                                    s/Alan N. Bloch
                                                    United States District Judge

ecf:         Counsel of record

---

considered by the ALJ. See Hyson v. Comm'r of Soc. Sec., 2013 WL 2456378, at *20 (N.D. Ohio June 5, 2013)); Timbrook v. Colvin, 2015 WL 331799, at *14 (E.D. Mo. Jan. 23, 2015). Similarly, while Plaintiff complains that the ALJ relied on Ms. Al Shirify's lack of medical training in weighing her testimony, such a factor is not improper, see SSR 06-3p, 2006 WL 2329939 (S.S.A.), at *4 (Aug. 9, 2006), and again was just one of the factors he considered. Indeed, the ALJ expressly indicated that the "most important[]" (R. 35) element of his evaluation of Ms. Al Shirify's testimony was that it was not supported by the clinical and diagnostic medical evidence, which he discussed at length in his decision, and which is undeniably a proper factor. See S.S.R. 06-3p at *4. As the Court has discussed, substantial evidence supports the ALJ's findings regarding the objective medical evidence.

      Accordingly, for all of the reasons stated herein, the Court affirms the ALJ's decision.